RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: PAMELA A. HOSTALLERO (026711)
 MICHAEL E. GOTTFRIED (010623)
 Deputy County Attorney
 hostallp@mcao.maricopa.gov
 gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorney for Defendant *Maricopa County and Russell Skinner*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Johnson, an individual, for herself and on behalf of and as pending Personal Representative of the Estate of Cassidy Stigler,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Russ Skinner and Jane Doe Skinner; James Jarvis II and Jane Doe Jarvis II,<br><br>Defendants. | NO. CV-24-02860-PHX-SPL (JZB)<br><br>**DEFENDANT MARICOPA COUNTY AND RUSS SKINNER'S MOTION TO DISMISS** |

Defendants Maricopa County and Russ Skinner ("Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss Plaintiff's Complaint because Plaintiff has sets forth no claim for relief against the Defendants. Plaintiff failed

1

to state with the required specificity a claim under *Monell,* her only federal claim. Plaintiff did not serve a Notice of Claim on Defendant Skinner, so all state claims attributed to him should be dismissed. Regardless, Plaintiff's state law claims of negligence and/or gross negligence fail under Arizona law, specifically under *Ryan v. Napier,* which precludes a negligence cause of action for intentional acts and under general principals of qualified immunity. Defendants support their motion with the following memorandum of points and authorities. A Certificate of Conferral is filed concurrently with this Motion.

**I.   FACTS**

On September 8, 2023, Cassidy Stigler ("Ms. Stigler") was arrested by the Phoenix Police Department ("PPD"). (Doc. 1.2, p. 5 at ¶ 25). After her arrest, Ms. Stigler was transported to St. Joe's Hospital where she spent the next nine hours. (Doc. 1.2, p. 5 at ¶ 31). After her release from St. Joe's Hospital, Ms. Stigler was transported to the Maricopa County Sheriff's Office ("MCSO") Intake, Transfer, and Release facility. (Doc. 1.2, p. 5 at ¶ 33). Ms. Stigler was designated a suicide risk and placed in a safe cell. (Doc. 1.2, p. 5 at ¶ 34). During her time that she was placed in a safe cell, Ms. Stigler was allowed two blankets, and she was provided hourly nurse welfare checks and continuous video monitoring. (Doc. 1.2, p. 5 at ¶ 35). Ms. Stigler can be seen moving under the blankets from 11:59:56 A.M. to 12:27 P.M. (Doc. 1.2, p. 6 at ¶ 40).

At 13:27:30, MCSO/CHS employees check on Ms. Stigler. (Doc. 1.2, p. 8 at ¶ 64).

At 13:32:14, MCSO/CHS employees stop at Ms. Stigler's cell where a nurse attempts to speak with Ms. Stigler. (Doc. 1.2, p. 8 at ¶ 67). At 13:33:23 – apparently because she was getting no response from Cassidy – the CHS employee kicks the door to Cassidy's cell multiple times. (Doc. 1.2, p. 8 at ¶ 68). This CHS employee stayed at Cassidy's cell for 25 seconds. (Doc. 1.2, pp. 8-9 at ¶¶ 68-69). At 13:37:57, Cassidy is checked again and after having tried to talk to Cassidy, an MCSO guard retrieves multiple MCSO and CHS employees to come to Cassidy's cell. (Doc. 1.2, p. 9 at ¶ 73). At 13:39, after efforts to get Ms. Stigler to respond failed, medical was called and CPR efforts began. (Doc. 1.2, p. 9 at

¶¶ 75-76). Ms. Stigler was subsequently transported to the hospital where she succumbed to her injuries. (Doc. 1.2, p. 2 at ¶ 7).

## II.  MOTION TO DISMISS STANDARD

A rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. In determining whether a rule 12(b)(6) motion should be granted, the Court must decide whether the facts alleged, if true, would entitle plaintiffs to a legal remedy. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A rule 12(b)(6) dismissal is proper where, as here, there is an absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a dispositive motion, inference as to a material fact may be drawn in favor of the nonmoving party only if it is "rational" or "reasonable" and otherwise permissible under the governing substantive law. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626 (9th Cir. 1987)*; citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 106 S.Ct. 1348, 1356–57 (1986); *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680–81 (9th Cir.1985). Clearly, said the Court, "there must be some limit on the extent of the inferences that may be drawn in the nonmoving party's favor from whatever 'specific facts' it sets forth; if not, Rule 56(e)'s requirement of "specific facts" would be entirely gutted." *T.W. Elec.,* 809 F.2d at 631.

## III.  LEGAL ARGUMENT

    **A.  The Federal Custom and Practice Claims Against Maricopa County and Russ Skinner Should be Dismissed Because There are Insufficient Facts to State a Viable Claim.**

Citing to the seminal case *Monell v. Department of Social Services of the City of New York et al.*, 436 U.S. 658 (1978), Plaintiff alleges that "patterns, customs, and practices employed in Maricopa and MCSO jail and jail health environments" led to her damages. To establish liability under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [they] w[ere] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). In pleading a *Monell* claim, a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 656 F.3d 1202, 1216 (9th Cir. 2011)); *see also Dougherty v. City of Covina,* 654 F.3d 892, 900-901 (9th Cir. 2011) (holding that the district court properly dismissed a § 1983 claim against the City because the complaint did not contain facts "demonstrating that his constitutional deprivation was the result of a policy, custom or practice of the [City] or that the custom or practice was the 'moving force' behind his constitutional deprivation"); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (Finding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and courts "considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Specificity regarding the policy is required in a complaint to survive a motion to dismiss. *See Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2020 WL 4446506, at *9 (D. Ariz. Aug. 3, 2020) ("…[D]istrict courts have accordingly required plaintiffs to "specify the content of the policies, customs, or practices the execution of which gave rise to [the] Constitutional injuries." (Importantly, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiff's allegations do not identify with any modicum of specificity what policies are at issue. Rather, they allege that a municipal policy caused decedent's death (Doc. 1.2, p. 16 at ¶¶ 139 and 140); and that Defendants "patterns, customs, and practices employed in Maricopa and MCSO jail and jail health environments are such that present a

substantial risk of serious harm to all inmates who are battling drug overdoses, withdrawals, and suicidal actions." (Doc. 1.2, p. 16 at ¶134). It is simply not enough for Plaintiff to try to bootstrap into a *Monell* claim their after-the-fact perceptions of the decedent's encounter with the MCSO and CHS by making factually unsupported allegations that this incident reflected a municipal policy. Importantly, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino,* 99 F.3d at 918. The Ninth Circuit recognizes that a custom or practice can be "inferred from widespread practices or evidence of repeated constitutional violations." *See Hunter v City of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011). *See also Sommers v City of Santa Clara*, 516 F.Supp.3d 967, 984 (N.D. Cal., 2021) ("In order to establish a triable issue of fact on a Fourth Amendment *Monell* claim based on a municipality's pattern, practice, or custom, [Plaintiff] would need evidence of a *recurring failure* to investigate and discipline municipal officers for constitutional violations to help establish her claim.") (Emphasis added). *See also Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2020 WL 4446506, at *9 (D. Ariz. Aug. 3, 2020) ("Following *A.E.* and *Starr*, district courts have accordingly required plaintiffs to "specify the content of the policies, customs, or practices the execution of which gave rise to [the] Constitutional injuries." At a minimum, Plaintiff has to establish that the County or the Sheriff had actual or constructive knowledge that his policies were *substantially certain* to cause a constitutional violation. *See Castro v. County of Los Angeles,* 833 F.3d 1060, 1076 (9th Cir. 2016) Instead, Plaintiff pled at ¶137 of her Complaint that "[i]t is unquestionable that there is a systemic failure by Maricopa and Skinner by ratifying customs, practices, patterns and policies that deliberately go against the standards of care medically, and also deprive individuals of their Constitutional Rights."

Plaintiff's Complaint lacks the specificity required to state a *Monell* policy claim and the random use of the phrase "policy and procedure" is not enough to morph their vague allegations into a claim for relief. Compare, for example, the level of specificity described

in *Hernandez v. City of Phoenix*, CV-20-00767-PHX-GMS, 2021 WL 100857, at *2–3 (D. Ariz. Jan. 12, 2021) where the Court, denying a motion to dismiss the *Monell* claim, found the plaintiff's amended complaint sufficient in having identified specific prior officer-involved shootings; the formation of a committee to address departmental violence; the committee's recommendations; the number of officer-involved shootings in a particular year; and departmental settlements in excessive force cases.

Here, Plaintiff has not provided any specificity establishing that a pattern of similar constitutional violations arising from a particular municipal policy demonstrated deliberate indifference or knowledge that unconstitutional conduct by the officers and resultant injury were predictable. Indeed, Plaintiff admits that Ms. Stigler was checked on more than an hourly basis, even though only hourly was required pursuant to MCSO and CHS policies and procedures. Plaintiff further admits that as soon as it was determined that Ms. Stigler had stopped responding, additional resources were immediately sought, and CPR began.

As an alternative to liability arising from a municipal policy, a viable claim may arise where evidence of "widespread practice . . . is so permanent is well settled as to constitute a 'custom or usage' with the force of law," *Gillette v. Delmore*, 979 F.2d 1342, 1348-49 (9th Cir. 1992). Such a practice, however, cannot ordinarily be established by a single constitutional deprivation, a random act, or an isolated event. *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir.1999). Instead, a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) Here, Plaintiff has not identified the widespread custom or practice that was followed by the Defendants. Rather, Plaintiff cites in ¶¶ 82-93 several articles, all of which are hearsay and none of which support Plaintiff's allegations. When analyzing a *Monell* claim "the contents of a newspaper article are not admissible to prove the truth of the matters written about. *Ahern v. Kammerer,* 2024 WL 4368276 (September 24, 2024). Plaintiff's efforts to equate the

rising incarceration rates and drug overdose deaths in the jails to a custom or policy issue by citing to hearsay evidence is insufficient.

Plaintiff fails to identify any prior instances of personnel following the amorphous custom or practice that would have put a defendant on notice that similar past incidents were caused by the lack of an appropriate policy. Thus, Plaintiff has failed to state a claim, and Plaintiff's *Monell* claim in Count Three should be dismissed.

### B. Plaintiff Failed to Serve a Notice of Claim on Defendant Skinner for the State Law Claims.

Plaintiff makes several state law claims against Defendant Skinner including negligence and gross negligence. Pursuant to Arizona Revised Statute § 12-821.01:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues.

Plaintiff was required to serve a notice of claim on each Defendant for any state law claims. Plaintiff timely served a Notice of Claim on the Defendant County, but not on Defendant Skinner. As such, Plaintiff's state law claims in Count II, Negligence/Gross Negligence, must be dismissed as to Defendant Skinner.

### C. Plaintiff's State Law Claims Based on Negligence Must be Dismissed as a Matter of Law.

Plaintiff alleges that Defendants Maricopa County and Skinner "had a duty to assure the safety and well-being of Cassidy while in their care, custody and control." (Doc. 1.2, p. 14 at ¶ 115). In Arizona, intentional actions, like the ones alleged here, cannot be the basis of a negligence (or a negligence-derivative) claim. *Ryan v. Napier*, 245 Ariz. 54 (2018); *see also Amerson v. Township of Waterford,* 2012 WL 5948044 (November 28, 2012) *citing Miller v. Sanilac County,* 606 F.3d 240 (6th Cir. 2010) (the law does not allow intentional acts, even when couched in terms of breach of duty, to be the basis of a claim of gross negligence); *Spicer v. District of Columbia,* 916 F.Supp.2d 1 (D.D.C. 2013) (as

noted in the *Ryan v. Napier* decision, a plaintiff can allege a negligence and an intentional tort in the same complaint; however, each claim must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the [intentional torts] and violative of a distinct standard of care).

Count II of the Complaint is a negligence/gross negligence cause of action. (Doc. 1.2 at pp. 14-16]. Civil liability cannot be imposed on a government employee for "engaging in [justified] conduct," regardless of the theory of recovery. *Ryan*, 245 Ariz. at 63. Further, a plaintiff cannot base a negligence claim on an intentional act, said the Court. *Id.* at 60-61. In order to maintain a negligence claim, a plaintiff must "prove a duty requiring the defendant to conform to a standard of care, breach of that duty, a causal connection between breach and injury, and resulting damages." *Id.* at 59. Importantly, said the *Napier* court, any negligence claim must be based upon unintentional conduct independent of the employee's intentional acts. *Id*. at 238. (emphasis added). In *Ryan*, the Court used the example of a law enforcement officer who unintentionally drops a K-9's leash, which results in the K-9 biting the plaintiff. *Ryan*, 245 Ariz. at 62. Because such conduct is not intentional, the plaintiff can bring an independent negligence claim. *Id*. In contrast, the Court held that when a law enforcement officer intentionally releases and orders a K-9 to bite the plaintiff, such conduct is intentional use of force, and the plaintiff cannot bring a negligence claim. *Id.*, 245 Ariz. at 60-61.

Plaintiff's Complaint fails to allege any unintentional acts by Defendants. Indeed, Plaintiff specifically alleges that "Defendants' acts and omissions to act set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Ms. Stigler and a high probability that substantial harm would result." (Doc. 1.2, p. 15 at ¶ 122). And "Defendants breached their duties, as identified by the allegations set forth in the paragraphs above, by among things and without limitation willfully participating in a practice or custom that denied Cassidy adequate monitoring, and by ratifying improper conditions, customs, policies, procedures and/or practices that

jeopardized the safety of Cassidy." (Doc. 1.2, p. 15 at ¶ 125).  It is clear from Plaintiff's allegations that she is arguing that Defendants intentionally failed to fulfill their duties or intentionally followed policies and practices that caused her damages.  *Ryan* prohibits Plaintiff from asserting negligence claims arising out of intentional conduct and the Court should dismiss Counts II.

### D. Qualified Immunity Further Precludes Liability Against Defendants for Discretionary Acts.

Assuming *arguendo* that the Court does not dismiss Plaintiff's negligence/gross negligence claims as argued in section B *supra,* these claims should still be dismissed under Arizona's qualified immunity law.  In support of this argument, Plaintiff cites to a video of staff repeatedly checking on Ms. Stigler and asks this court to infer from the information gleaned from the video that each and every staff member who checked on Ms. Stigler did so not only negligently but grossly negligent.  That is neither reasonable and/or rational.  *T.W. Elec. Service, Inc.,* 809 F.2d at 631-632.

In Arizona, "qualified immunity generally provides public officials, including police officers, limited protection from liability when 'performing an act that inherently requires judgment or discretion.' " *Spooner v. City of Phoenix*, 246 Ariz. 119, 123 ¶ 9 (App. 2018). "The doctrine thus gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation marks omitted). If an officer is performing a discretionary act within the scope of his public duties, he can only be liable if he "knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Chamberlain v. Mathis*, 151 Ariz. 551 at 558 (1986). "If immunity applies, an officer is shielded from liability unless the conduct rises to gross negligence or recklessness." *Jennings v. Agne in and for County of Maricopa*, 254 Ariz. 174 (Ct. App. 2022).  To establish gross negligence, the claimant essentially must show wanton misconduct that "is flagrant and evinces a lawless and destructive spirit." *Badia v. City of Casa Grande,* 195 Ariz. 134, 141 (App. 1999) (internal citations

omitted). Whether gross negligence exists is generally a fact question for the jury, but it may be resolved on summary judgment if "no evidence is introduced that would lead a reasonable person to find gross negligence." *Id.*

Here, Plaintiff alleges that Defendants were "negligent and grossly negligent by failing to properly provide medical care and failing to properly monitor Ms. Stigler for signs of severe medical symptoms that would have saved Ms. Stigler's life." (Doc. 1.2, p. 14 at ¶ 117). The act of making rounds to check on inmates may be related to a policy; however, the decisions made by MCSO and CHS staff in responding to the events of that day or determining, generally, how an inmate acknowledges the employee during checks, inherently required judgment and discretion stemming from their training. Based on the facts as laid out by Plaintiff, she has not shown that Defendants knew or should have known that they were acting in violation of established law or acted in reckless disregard of whether their activities would deprive another person of their rights. Indeed, Plaintiff admitted that although it was required under policy that Ms. Stigler be checked every hour, she was actually checked much more often. Plaintiff also admitted that as soon as Ms. Stigler stopped responding to staff, she received immediate medical care. As such, Defendants are qualifiedly immune from Plaintiff's negligence claim and Plaintiff now has the markedly higher burden of showing that Defendants were grossly negligent.

Plaintiff admitted that "[u]pon Ms. Stigler's arrival, she was designated a suicide risk and placed into a safe cell for round the clock monitoring. (Doc. 1.2, p. 5 at ¶ 34). Plaintiff admitted that Ms. Stigler was assigned hourly nurse checks, due to her classification. (Doc. 1.2, p. 5 at ¶ 35). Plaintiff admitted that "[f]rom 11:59:56 AM to 12:27 PM, Ms. Stigler is seen moving under her blanket" during checks. (Doc. 1.2, p. 6 at ¶ 40). Plaintiff admitted that Ms. Stigler was checked at 12:31 P.M., 12:34 P.M, 12:35 P.M., and 12:45 P.M., 13:00:28 PM, 13:17:15 PM, 13:27:30 PM, and 13:32:14 PM, 13:33:23 PM, 13:37:57 PM, and 13:39 PM. (Doc. 1.2, pp. 7-9 at ¶¶ 56, 59, 62, 64, 66, 68, 73 and 75). Based on these admissions, Ms. Stigler was checked much more often than the required one-hour checks. Indeed, MCSO and CHS went above and beyond the

required one-hour check, often checking on Ms. Stigler within minutes of the last check. Plaintiff admits that once Ms. Stigler does not acknowledge the detention officer during a check at the 13:37:57 PM, the detention officer retrieves multiple MCSO and CHS staff. (Doc. 1.2, p. 9 at ¶ 73). Staff attempt to communicate with Ms. Stigler. (Comp. 74). When Ms. Stigler does not respond, the cell door is open and medical care is provided. (Doc. 1.2, p. 9 at ¶ 75). Plaintiff's statement that "one hour and twelve minutes had elapsed with absolutely no signs of movement from Ms. Stigler," is inconsistent with all the other facts and admissions made by Plaintiff and the continuing checks by both MCSO and CHS staff noted in her Complaint. (Doc. 1.2, p. 9 at ¶ 76). The Court would have to infer that all eleven checks after the 12:27 PM checked were done not only negligently but with gross negligence. Even if any of the numerous checks noted in Plaintiff's Complaint were performed negligently, there is absolutely no evidence that these checks were performed with the requisite wanton misconduct or lawless and destructive spirit necessary to show gross negligence. Indeed, the sheer number of times Ms. Stigler was checked on by staff shows they were more than diligent in their efforts to perform their duties. As such, Plaintiff does not meet the higher standard required for demonstrating gross negligence and this cause of action should be dismissed.

## IV.   CONCLUSION

Based on the foregoing as it relates to the sole federal cause of action against Defendants Maricopa County and Skinner, Plaintiff failed to satisfy the requirements of a *Monell* claim by sufficiently alleging underlying facts to give fair notice and to enable Defendants to defend itself effectively. Because Plaintiff failed to provide with specificity the policy that was ignored or not in place that deprived her of her constitutional rights, this cause of action should be dismissed.

As for the state claims, Plaintiff failed to serve a notice of claim on Defendant Skinner and the state claims against him should be dismissed. Moreover, intentional acts cannot be the basis of a state negligence claim and, regardless, qualified immunity precludes a negligence claim and Plaintiff failed to meet the much higher burden of proof

to support a gross negligence claim. Plaintiff's state law claims should therefore also be dismissed.

**RESPECTFULLY SUBMITTED** this 25th day of November 2024.

                        RACHEL MITCHELL
                        MARICOPA COUNTY ATTORNEY

          BY: /s/ Pamela A. Hostallero
                PAMELA A. HOSTALLERO
                MICHAEL E. GOTTFRIED
                Deputy County Attorneys
                *Attorney for Defendant's Maricopa*
                *County and Russell Skinner*

## CERTIFICATE OF SERVICE

Per Article II(D)(3) of the Electronic Case Filing Administrative Policies and Procedures Manual, "No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." If the foregoing document is served on a party not listed in the Court's Case Management/Electronic Case Files (CM/ECF) System, service by paper copy will be indicated below or a certificate of service will be filed separately within a reasonable time after service.

*/s/ D. Shinabarger*

S:\CIVIL\CIV\Matters\CJ\2024\Johnson (Stigler) v. City of Phx 2024-1175\Pleading\Word PDF\MTD - Final 11.25.24.docx