Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Johnson, an individual, for herself and on behalf of and as pending Personal Representative of The Estate of Cassidy Stigler,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Russ Skinner and Jane Doe Skinner; James Jarvis II and Jane Doe Jarvis II,<br><br>Defendants. | Case No.: CV-24-02860-PHX-SPL (JZB)<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MARICOPA COUNTY AND RUSS SKINNER'S MOTION TO DISMISS**<br><br>(Assigned to the Hon. Steven P. Logan and referred to the Hon. John Z Boyle) |

Through undersigned counsel, Plaintiffs hereby respond in opposition to "Defendant Maricopa County and Russ Skinner's Motion to Dismiss" ("Defendants' Motion"), ECF No. 9, filed by Defendant County of Maricopa (the "County") and Defendant Russ Skinner ("Skinner") (collectively, "Defendants").

This Response is supported by the relevant parts of the record and the Memorandum of Points and Authorities that follows.

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When resolving a motion to dismiss, a court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts pled are assumed to be true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative

2

explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

## II.   PLAINTIFFS' *MONELL* CLAIM IS SUFFICIENTLY PLED.

Count III of Plaintiffs' Complaint is brought against Defendants for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Defendants contend that Count III is insufficiently pled.

Defendants argue that Plaintiffs have not sufficiently identified the alleged policies of the County, stating that "Plaintiff's Complaint lacks the specificity required to state a *Monell* policy claim . . . ." Defs.' Mot. 5:26. This misstates the applicable pleading standard. To plead a *Monell* claim, Plaintiffs need not specifically recite the details of an allegedly deficient policy – rather, they must merely "allege facts that would support the ***existence*** of the alleged policy, practice, or custom." *Stuart v. City of Scottsdale*, No. CV-21-01917-PHX-DJH, at *10 (D. Ariz. Nov. 7, 2024) (emphasis omitted and added) (first citing *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); and then citing *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011)); *see also Cavanaugh v. Cnty. of San Diego*, No. 20-56311, at *3 (9th Cir. Dec. 22, 2021) ("[A] Monell claim requires the plaintiff to plead facts establishing that the county had a policy of deliberate indifference."). In fact, "[t]he Ninth Circuit has held that plaintiffs need not specifically allege a custom or policy; ***it is enough if the custom or policy can be inferred*** from the allegations of the complaint." *Barrett v. Maricopa County Sheriff's Office*, No.

3

CV 08-2095-PHX-GMS (MHB), at *10 (D. Ariz. Jan. 4, 2010) (emphasis added) (citing *Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986)).  And with respect to a deficient custom or practice, even Defendants concede that one need only "be '***inferred*** from widespread practices or evidence of repeated constitutional violations.'"  Defs.' Mot. 5:8-10 (emphasis added) (quoting *Hunter v City of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (first citing *Sommers v City of Santa Clara*, 516 F.Supp.3d 967, 984 (N.D. Cal., 2021); and then citing *Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, at *9 (D. Ariz. Aug. 3, 2020)).

Here, Plaintiffs have more than satisfied the pleading standards set forth above.  Citing an Arizona Republic article, the contents of which are incorporated into the Complaint's allegations by reference, *see Mitchell v. JPMorgan Chase Bank NA*, No. CV-22-00435-TUC-RM, at *3-4 (D. Ariz. Aug. 29, 2023) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)), Plaintiffs allege that from 2019 to 2023 the inmate death rate in County jails skyrocketed to "astronomical" levels, having quadrupled in that brief time span.  *See* Pls.' Compl. ¶¶ 81-83, 87-89.  As alleged, "Cassidy's death coincided with the astronomical uptick in jail deaths with [the County]." *Id.* ¶ 89.  Quoting the Republic, Plaintiffs allege that "[s]cholars who study in-custody deaths in U.S. jails and prisons said those numbers are incredibly high when compared with similarly sized jail systems and even jails with much larger populations." *Id.* ¶ 83.  The Complaint further alleges, again citing that article, that "the leading causes of death in [County] jails are drug overdoses, drug withdrawals, and suicides." *Id.* ¶ 84.  The Complaint pleads that "[the County's] patterns, customs, and practices have led to this 'astronomical' rise in deaths." *Id.* ¶ 94.

4

Plaintiffs allege that "County's jails remain understaffed, according to the current and former Sheriff's Office administrations, which has hindered operations and challenged efforts to maintain safe conditions." *Id.* ¶ 85. Understaffing is a specific policy, practice, or custom. Moreover, the Complaint alleges that:

> Skinner said in a statement. "In addition to the recent projects implemented involving training, scanners, prevention services through our tablet program, and narcotic K9s in our jail facilities, we are working to enhance additional services through the use of medical monitoring technology," the sheriff said. "We will remain vigilant and proactive in the effort to connect inmates to needed services and prevention programs.

*Id.* ¶ 86 (quoting the Arizona Republic article). That Skinner has implemented new policies, practices, or customs in response to the overwhelming inmate death rate in his jails necessarily implies that the previous policies, practices, or customs were deficient and were contributing to that astronomical death rate. As another example of a deficient policy, practice, or custom, Plaintiffs allege that the County "hid multiple deaths from their reported numbers. For example, they did not include in reported inmate death numbers inmates who died in a hospital or who received a compassionate release because death was imminent." *Id.* ¶ 96. Finally, the Complaint alleges that a Carnegie Mellon professor who co-authored a book about inmate deaths reacted incredulously to the County's sky-high inmate death rate and admonished it to "review its ***policies*** for drug withdrawal treatment and suicide prevention." *Id.* ¶ 93 (certain emphasis omitted). Contrary to Defendants, Plaintiffs have sufficiently alleged facts "support[ing] the ***existence*** of [ ] alleged polic[ies], practice[es], or custom[s]" of the County. *See Stuart*, No. CV-21-01917-PHX-DJH, at *10 (emphasis added).

Also contrary to Defendants, Plaintiffs' Complaint point[s] to a pattern of prior, similar violations of federally protected rights, of which the County and Skinner had actual or constructive notice. The Complaint alleges that the County's inmate death rate **quadrupled** from 2019 to 2023, the year of Cassidy's death. *See id.* ¶¶ 87-89. It defies logic to suppose that by the time of Cassidy's death in 2023, at the apex of the surge in County deaths, Skinner and the County were not fully aware (or at the very least, constructively aware) that inmate deaths in their jails had skyrocketed to astronomical levels. Given that "[i]t is clearly established that the Fourteenth Amendment prohibits prison officials from displaying 'deliberate indifference' to the serious medical needs of detainees in custody," and they "may not simply 'decline[] to act'" when "aware of a present 'substantial risk to [an inmate's] health,' including a psychiatric risk," *Gilbert v. Turner*, No. 22-56217, at *3-4 (9th Cir. May 3, 2024) (internal citation omitted) (quoting *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1194 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)), Plaintiffs' Complaint, with all reasonable inferences therefrom construed in Plaintiffs' favor as they must be, clearly points to a pattern of prior violations of County inmates' constitutional rights of which Defendants were constructively aware.

Defendants complain that the Arizona Republic article incorporated into the Complaint is "hearsay." But at this stage, Plaintiffs are merely utilizing the article to support, and add to, the allegations in their pleading, not to introduce it as admissible evidence at trial. At this juncture, whether or not its statements are hearsay is irrelevant, as they are simply allegations, and Defendants offer no authority disallowing the use of

hearsay in a complaint's allegations. Defendants do cite *Ahern v. Kammerer*, 3:21-cv-00561-YY (D. Or. Oct. 2, 2024), but that opinion in no way supports the proposition that "the contents of a newspaper article are not admissible to prove the truth of the matters written about," as they contend. *See* Defs.' Mot. 6:25-27. It merely holds that newspaper articles referencing the filing of other and similar lawsuits against a municipality do not, in and of themselves, conclusively establish that said municipality has a deficient policy, custom, or practice. *See Ahern*, 3:21-cv-00561-YY, at *9. Moreover, that case was decided at the summary judgment stage, not on a motion to dismiss. *Id.* *16. At this stage, Plaintiffs are not required to prove, nor do they contend, that the article, in and of itself, conclusively establishes the existence of deficient policies, practices, or customs on the County's part. Rather, at this stage the Republic article, as incorporated into the Complaint, merely constitutes allegations – allegations that are to be taken, along with all reasonable inferences therefrom, as true.

For all the foregoing reasons, Plaintiffs' *Monell* claim is sufficiently pled and must survive dismissal.

**III.   PLAINTIFFS ARE DISMISSING THEIR STATE LAW CLAIMS AGAINST SKINNER.**

Defendants further contend that Plaintiffs' state law claims against Skinner, for negligence and gross negligence as contained in Count II, must be dismissed on the grounds that Plaintiffs did not serve Skinner with a Notice of Claim. Because Plaintiffs' counsel began representing them after they submitted their Notices of Claim in this matter, they do not presently have information sufficient to either agree or object to this contention. Out of an abundance of caution and to preserve their right to seek relief against the Sheriff at a

7

later date should further investigation support that he was served, Plaintiffs are filing this day a Notice of Voluntary Dismissal Without Prejudice of Skinner from Count II.

## IV. PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS ARISE FROM DEFENDANTS' UNINTENTIONAL ACTIONS AND OMISSIONS.

Defendants next advance the strange argument that Plaintiffs' negligence and gross negligence claims in Count II are not supported by any unintentional acts on Defendants' part. A review of the relevant background facts, as alleged in the Complaint, easily disposes of this notion.

As alleged:

Cassidy arrived in the County's ITR on or about September 8, 2023, having just been released from a nine (9) hour stay at St. Joseph's Hospital. *See* Pls.' Compl. ¶¶ 25, 31-33. That hospital stay was due to fentanyl overdose and severe head injuries from a violent confrontation with Defendant Officer Jarvis, during which Cassidy's head struck the pavement multiple times. *Id.* ¶¶ 27-28, 49-50.

"Upon her arrival, she was designated a suicide risk and placed into a safe cell for round the clock monitoring." *Id.* ¶ 34. Her file states that she was required to have "hourly nurse welfare checks" and "[c]ontinuous video monitoring via monitor tech." *See id.* ¶ 35. While in her cell, she was supposed "to answer when [her] name [wa]s called and keep [her] face uncovered to prevent green blanket from being removed." *See id.* ¶¶ 36, 39 (emphasis omitted).

Plaintiffs obtained surveillance video of Cassidy in her cell which "starts at 11:59:56 AM on September 9, 2024 and runs until 1:50:31 [P.]M." *Id.* ¶ 37. Contrary to County

8

policies and despite the requirement for "continuous video monitoring," **Cassidy's face remains fully covered** by the blanket throughout the entirety of the nearly two (2) hour video, *id.* ¶¶ 38-39, and there is no indication anyone requests verbal confirmation from her. Moreover, during the last hour-and-a-half of the video – from 12:27 until 1:50 P.M. – **Cassidy stops moving entirely**. *See id.* ¶¶ 37, 40-42. Crucially, and also contrary to County protocol, **no nurse welfare checks are made** during the entirety of the video. *See id.* ¶¶ 43, 56-75. In fact, until 1:39 P.M., **no one even enters her cell**. *See id.* ¶ 43. By that time, she had been completely covered by a blanket and unresponsive for more than an hour. *See id.* ¶¶ 41-43. Though County personnel then attempt CPR, it was already too late to save Cassidy's life, as she "was found dead, face down in her cell, with visible injuries to her head, neck, and other areas of her body." *Id.* ¶¶ 43-44, 77.

In summary, County personnel knew that Cassidy had just been released from a nine (9) hour hospital stay resulting from drug overdose and severe head injuries, was suicidal, and was having severe withdrawal symptoms. *See id.* ¶¶ 47-52. They knew she was supposed to be continuously monitored on video, to have her face uncovered, and to answer when her name was called. *See id.* ¶¶ 35-36, 39. They knew she was supposed to have a nurse welfare check at least once an hour. *See id.* ¶ 35. Nevertheless, from 12:00 to 1:39 P.M. – despite being completely covered by a blanket and, from 12:27 P.M. on, completely motionless – no one even entered her cell, attempted to get her to make her face visible, or attempted to obtain a verbal response from her. *See id.* ¶¶ 37-43. As a result, by the time County personnel did enter her cell and attempt life saving measures, it was already too late to save her life. *See id.* ¶¶ 43-44, 77.

The foregoing allegations demonstrate gross negligence and/or recklessness on the part of County personnel, not intentional conduct. Plaintiffs are not alleging that County personnel intentionally, or out of some nefarious or malicious purpose to harm her, failed to personally check in on and properly monitor Cassidy. Rather, they are alleging that personnel were simply – but grossly – derelict in their duties. This is textbook gross negligence and/or recklessness, and Defendants' contention that Plaintiffs' claims do not involve any unintentional conduct on their part is wholly unsupported.

## V.   DEFENDANTS ARE NOT SHIELDED FROM LIABILITY BY QUALIFIED IMMUNITY.

Finally, Defendants argue that they are protected from liability for their negligent conduct due to the doctrine of qualified immunity. Not so. Qualified immunity does not apply here. Nevertheless, even if Defendants do have qualified immunity, their conduct is still not shielded from tort liability.

"As a general rule, public entities and public employees *are* subject to tort liability for their negligence." *Spooner v. City of Phx.*, 435 P.3d 462, 466, ¶ 8 (Ariz. App. 2018) (emphasis added) (first citing *Ryan v. State*, 134 Ariz. 308, 309-10 (1982) ("[T]he parameters of duty owed by the state will ordinarily be coextensive with those owed by others."), *superseded by statute on other grounds as stated in Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 174 Ariz. 336, 339 (1993); and then citing *Hogue v. City of Phoenix*, 240 Ariz. 277, 280, ¶ 9 (App. 2016)).

However, "[c]ommon law qualified immunity generally provides public officials, including police officers, **limited** protection from liability when 'performing an act that inherently requires judgment or discretion.'" *Id.* ¶ 9 (emphasis added) (quoting

10

*Chamberlain v. Mathis*, 151 Ariz. 551, 555 (1986) (first citing *Portonova v. Wilkinson*, 128 Ariz. 501, 503 (1981); and then citing Restatement (Second) of Torts § 895D (1979)). "If immunity applies, an officer is shielded from liability unless the conduct rises to gross negligence or recklessness." *Jennings v. Agne*, 520 P.3d 665, 669, ¶ 15 (Ariz. App. 2022) (citing *Spooner*, 246 Ariz. at 124, ¶ 10).

Here, the negligent and/or reckless conduct on the part of Defendants of which Plaintiffs complain does not involve "performing an act that inherently requires judgment or discretion." Instead, Defendants' offending conduct involves binary, either-or, yes-or-no decisions. For instance, Plaintiffs are not contesting the quality of any required hourly nurse welfare check-ins – they are simply alleging that, over a two (2) hour span, none were even conducted. Similarly, Plaintiffs are not contesting the quality of Defendants' video monitoring of Cassidy. Instead, they contend that Defendants either failed to monitor her at all, or failed to – as required – obtain visual confirmation of her face and verbal confirmation of her alertness. Such conduct has no wiggle room for discretion or judgment calls. It is either performed or not performed, and here Defendants failed to perform. Moreover, even when performing an act that does inherently require judgment or discretion, officials are not protected by qualified immunity for plainly incompetent or illegal conduct. *See Spooner*, 246 Ariz. at 123, ¶ 9. Here, Defendants' failure to perform any hourly nurse welfare check-ins during a two (2) hour period, failure to obtain visual or verbal confirmation from Cassidy as required, and failure to investigate further after Cassidy became motionless, all despite the requirement for continuous video monitoring,

11

is extremely incompetent and/or borderline illegal conduct. Consequently, Defendants do not have qualified immunity for their conduct.

Nevertheless, even if Defendants *do* have qualified immunity, and they certainly do not, such immunity does not shield them from liability for grossly negligent or reckless conduct. *See Jennings*, 520 P.3d at 669, ¶ 15. Though the existence of gross negligence may be resolved on summary judgment if "no evidence is introduced that would lead a reasonable person to find [it]," the issue is generally a fact question for the jury. *Badia v. City of Casa Grande*, 195 Ariz. 134, 141 (App. 1999). Plaintiffs respectfully submit that Defendants' conduct as pled in their Complaint, and which is set forth in detail in **§ IV**, *supra*, easily rises to the level of gross negligence or recklessness – or at the very least, involves disputed issues of fact and should be resolved a jury. In summary, qualified immunity, even if it applies (and it does not), does not protect Defendants from liability here.

## VI.   CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' Motion in its entirety and rule that Plaintiffs' claims survive dismissal. In the alternative – to the extent, if any, that the Court finds any of Plaintiffs' claims to be insufficiently pled – Plaintiffs respectfully request the opportunity to amend instead of outright dismissal, in the interest of justice.

///

///

///

**RESPECTFULLY SUBMITTED** this 6th day of January 2025.

**MILLS + WOODS LAW, PLLC**

By  /s/ Sean A. Woods
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jody C. Corbett
Jody.corbett@phoenix.gov
maria.sandoval@phoenix.gov
Karen Stillwell
Karen.stillwell@phoenix.gov
duvelsa.rios@phoenix.gov
**OFFICE OF THE CITY ATTORNEY**
law.civil.minute.entries@phoenix.gov
200 W Washington, Ste. 1300
Phoenix, AZ 85003
*Attorneys for Defendant City of Phoenix*

Pamela A. Hostallero
hostallp@mcao.maricopa.gov
Michael E. Gottfried
gottfrim@mcao.maricopa.gov
**MARICOPA COUNTY ATTORNEY**
ca-civilmailbox@mcao.maricopa.gov
225 W Madison St.
Phoenix, AZ 85003
*Attorneys for Defendants County of Maricopa and Russ Skinner*

       /s/ Ben Dangerfield