RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: PAMELA A. HOSTALLERO (026711)
    MICHAEL E. GOTTFRIED (010623)
    Deputy County Attorney
    hostallp@mcao.maricopa.gov
    gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorney for Defendant Maricopa County
and Sheriff Gerald Sheridan

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Johnson, an individual, for herself and on behalf of and as pending Personal Representative of the Estate of Cassidy Stigler,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Gerald Sheridan and Jane Doe Sheridan; James Jarvis II and Jane Doe Jarvis II,<br><br>Defendant. | NO. CV-24-02860-PHX-SPL (JZB)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

Pursuant to Rule 7.2, Local Rules of Civil Procedure, Defendant Maricopa County and Sheriff Gerald Sheridan[1] reply in support to their Motion to Dismiss. Plaintiff fails to

---
[1] A Notice of Substitution of Public Officer was filed on January 6, 2025, replacing Russ Skinner with Gerald Sheridan, the newly elected Sheriff of Maricopa County.

offer any support beyond articles that were not including with any filing to support her failure to train cause of action.[2] Moreover, Plaintiff's negligent claim cannot be based on intentional acts; thus, this cause of action should be dismissed. Under Arizona law, qualified immunity does apply because Defendants' actions were discretionary. Finally, because the allegations in Plaintiff's Complaint failed to support a negligent or grossly negligent cause of action against Maricopa County, this claim should be dismissed.

Plaintiff voluntarily dismissed Defendant Sheridan from Count II. Because the duty to operate the jails has been statutorily delegated to the Sheriff and the County has no right to control operation of the jails, the County cannot be held vicariously liable for the torts of Sheriff's Deputies or Detention Officers. *See Fridena v. Maricopa County,* 18 Ariz.App. 527 (Ariz.Ct.App.1972) ("[T]he County, having no right of control over the Sheriff or his deputies in service of the writ of restitution, is not liable under the doctrine of Respondeat superior for the Sheriff's torts."); *see also Dimmig v. Pima County,* 2009 WL 3465744 *1 (Ariz.Ct.App.2009) (holding Pima County could not be liable under the doctrine of respondeat superior for torts committed during the Sheriff's exercise of his statutory powers to preserve the peace and make arrests). On the other hand, health care in the jail is the responsibility of the County, and CHS is an administrative agency of Maricopa County created to carry out that statutory duty. *Barrett v. Maricopa County Sheriff's Office,* No. CV 08–2095–PHX–GMS (MHB), 2010 WL 46786 (January 4, 2010).

As such, because Plaintiff voluntarily dismissed her negligence/gross negligence claims against the Defendant Sheridan, only the County remains as to Count II. The County is only vicariously liable for the acts of the Correctional Health Services staff, not MCSO personnel. However, solely for purposes of this Motion, because the actions described in the Complaint are not differentiated by MCSO or CHS staff, both are discussed in the analysis.

**I.    LEGAL ARGUMENT**

---

[2] The link Plaintiff includes in the Complaint results in a "page not found" notification. (Doc. 1.2, p. 10 at n. 1).

### A. Plaintiff's Response Does Nothing to Address the Deficiencies in the Complaint as to the *Monell* Cause of Action.

Plaintiff argues that Defendants misstate the *Monell* standard in their Motion to Dismiss. (Doc. 20, p. 3 at ll. 14-15). The standard for pleading a *Monell* cause of action is very clear and has been upheld for decades. Plaintiff first cites to *Stuart v. City of Scottsdale,* No. CV-21-01917-PHX-DJH, 2024 WL 4708059 (November 7, 2024) for the proposition that all that is required of a plaintiff is to "allege facts that would support the *existence* of the alleged policy, practice, or custom." (Doc. 20, p. 3 at ll. 18-19). Plaintiff pulls language from the citation to support her argument but ignores the fact that her selective quotation is misleading to the Court. The standard outlined by the court in *Stuart* is as follows:

> Allegations concerning *Monell* liability based on the existence of a policy are subject to the pleading requirements of *Twombly/Iqbal.* As the Ninth Circuit has explained, even in the context of a *Monell* claim, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (*quoting Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the Ninth Circuit previously had a liberal pleading standard for *Monell* claims, "[c]ourts in this circuit now generally dismiss claims that fail to identify the specific content of the municipal entity's alleged policy or custom." *Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) (citation omitted).

*Id.* at ¶ 5.

> In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of an unlawful policy. . . . It is well-established in the Ninth Circuit that a plaintiff asserting a *Monell* claim must allege *facts* that would support

the existence of the alleged policy, practice, or custom.

*Id.* at ¶ 5 (emphasis in the original) (internal citations omitted). In her Response, Plaintiff put her emphasis on the word "existence." (Doc. 20, p. 3 at l. 17). The Ninth Circuit, however, emphasizes the word "facts," when addressing the proper *Monell* standard. *Stuart,* No. CV-21-01917-PHX-DJH at ¶ 5). With the emphasis on facts, the court requires a plaintiff to allege sufficient facts to support the argument that a specific policy, practice or custom was either not in place or not followed. Here, Plaintiff relies solely on several articles, none of which were attached to the Complaint or the Response, to support her *Monell* claims. Plaintiff purports that these articles discuss the increased death rates in the jails, seemingly related to increased drug use. What Plaintiff fails to address is how these articles are relevant to this specific cause of action. Defense counsel and the Court are left to guess at any correlation which is insufficient to support a *Monell* claim.

Next Plaintiff cites to *Barrett v. Maricopa County Sheriff's Office*, No. CV 08-2095-PHX-GMS (MHB), 2010 WL 46786, at *10 (D. Ariz. Jan. 4, 2010) for the proposition that "plaintiffs need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint." (Doc. 20, p. 3 at ll. 25-28). As an initial matter, the plaintiff in *Barrett* was acting pro se. Courts have held that "the *Iqbal* pleading standard applies to *pro se* complaints, but they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Substantively, the court in *Barret* cited to *Shaw v. State of California Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 610 (9th Cir.1986) which found that although the complaint did not allege a specific policy or custom that was violated, the complaint sufficiently alleged:

> [A] pattern or a series of incidents of unconstitutional discriminatory enforcement of the laws where plaintiffs, who are black, alleged that the police had engaged in a campaign of race discrimination, resulting in the revocation of their liquor license; alleged that for a period of almost four years, police officers entered the bar as many as 18 times a shift, repeatedly brought police officers from other jurisdictions into the bar, attempted on more than one occasion to persuade the plaintiffs' employees to quit, tried more than once to dissuade customers

> from entering the bar, and arranged for multiple regulatory inspections by other City agencies; and alleged that other bars, owned by whites, were not treated in the same manner.

*Barrett,* 2010 WL 46786 at ¶ 7.  Here, Plaintiff offers no other specific incident or fact scenario sufficiently similar to the one in question that would put Defendants on notice of a policy or custom violation.  Indeed, Plaintiff continues to rely on articles as her sole support for her failure to train cause of action, that is simply not enough.  Arizona courts have held that reliance on a newspaper article is not sufficient to support a failure to train allegation.  *Sweet v. City of Mesa,* 2022 WL 363999 (February 4, 2022).  In *Sweet, s*imilar to what we see here, the plaintiff relied on several newspaper articles to support her failure to train cause of action related to an excessive use of force allegation.  *Id.* at ¶ 12.  The Court held that although these articles discuss use of force in jails, they do not establish that such occurrences happened with enough regularity to establish a custom or practice.  *Id.*

Even if the Court were to consider the articles, nowhere in Plaintiff's Complaint or Response does she connect the information in the articles to allegations related to this incident, namely that the articles address improper or inadequate cell checks when an inmate is the mental health unit.  Because Plaintiff fails to offer anything more than these articles to support her *Monell* claim, this cause of action should be dismissed.

    **B.**    **MCSO and CHS Actions Were Intentional and Cannot be the Basis of a Negligence Cause of Action.**

Defendant County argues in their Motion to Dismiss that under Arizona law, intentional actions, like the ones alleged here, cannot be the basis of a negligence (or a negligence-derivative) claim. *Ryan v. Napier*, 245 Ariz. 54 (2018).  Plaintiff offers no legal support to the contrary.  Instead, in response, Plaintiff outlined acts allegedly taken by Defendants in caring for Ms. Stigler (aka "Cassidy"), namely that they were negligent in the performance of cell checks. (Doc. 20).

Although Plaintiff argues in her Response that these actions were unintentional, the language in the Complaint contradicts that claim.  In the Complaint, Plaintiff alleged that: 1) Defendants knew or should have known that their actions would cause harm. (Doc. 1.2, p. 23 at ¶ 122); 2) Defendants "willfully participat[ed] in a practice or custom – an

intentional act. (Doc. 1.2, p. 23 at ¶ 122); 3) "denied Cassidy adequate monitoring, and by ratifying improper conditions, customs, policies, procedures and/or practices that jeopardized the safety of Cassidy." (Doc. 1.2, p. 23 at ¶ 122). Each of these acts, as alleged (knew, willfully, ratified), are the basis for intentional acts. *See e.g. Bryan v. U.S.*, 524 U.S. 184, 190 (1998) (a person acts willfully if he acts intentionally and purposely); *United Bank v. Mesa N.O. Nelson Co., Inc.,* 121 Ariz. 438 (1979) (Ratification requires intent to ratify plus full knowledge of all the material facts); *Forster v. U.S.,* 237 F.2d 617, 619 (9th Cir. 1956) (A person who knowingly does an act which the law forbids, or who knowingly fails to do an act which the law requires, purposely intending to violate the law or recklessly disregarding the law, acts with specific intent . . . . An act is done 'knowingly' if done voluntarily and purposely and not because of mistake, inadvertence or some other innocent reason).

The language used in the Complaint demonstrates that Plaintiff believes that the Defendants acted with intent. She offers nothing to counter that in her Response. Because Arizona law precludes intentional acts as the basis for a negligence claim, this cause of action should be dismissed. Without a negligence/gross negligence cause of action remaining against MCSO or CHS employee, any vicarious liability claim against Defendant County must also be dismissed.

### C. The Actions Taken by Defendants Were Subject to their Discretion, Thus Qualified Immunity Applies.

In her Response, Plaintiff argues that qualified immunity does not apply because Defendants' actions during Ms. Stigler's cell checks were not discretionary and even if they were discretionary, qualified still would not apply because their actions were grossly negligent. To support that allegation, Plaintiff argues that "Plaintiffs are not contesting the quality of any required hourly nurse welfare check-ins – they are simply alleging that, over a two (2) hour span, none were even conducted." (Doc. 20, p. 11, ll. 11-13). That is contradictory to the Complaint wherein Plaintiff alleges that:

1) From 11:59:56 AM until 12:27 P.M., Cassidy can be seen moving under the blanket. (Doc. ¶ 40).

2) Plaintiff stopped moving at 12:27. (Doc. , p. , ¶ 41).

3) MCSO and CHS employees can be seen briefly viewing Cassidy through the window in the door of her cell at:

    a. 12:31 P.M.

    b. Three minutes later at 12:34 P.M.

    c. One minute later at 12:35 P.M., and

    d. Ten minutes later) at 12:45 P.M

(Doc. 1.2, p. 14 at § 39).

4) Fifteen minutes later "[a]t 13:00:28, an MCSO employee walks by Cassidy's cell, writes on the clipboard, and for a couple of seconds looks into Cassidy's cell and moves on.

(Doc. 1.2, p. 16 at § 59).

5) Seventeen minutes later "[a]t 13:17:15, an MCSO employee can be seen looking in Cassidy's cell for 8 seconds, then writes on her clipboard and moves on."

(Doc. 1.2, p. 16 at § 62).

6) Ten minutes later, "[a]t 13:27:30, an MCSO employee wanders down the hallway and briefly peeks into Cassidy's cell and moves on."

(Doc. 1.2, p. 16 at § 64).

7) Five minutes later "[a]t 13:32:14, an MCSO and CHS employee come to Cassidy's door and open it." In order to evoke a response from Ms. Stiger, CHS kicked the cell door.

(Doc. 1.2, p. 16 at §§ 66, 67 and 68).

8) After receiving the required response, "[a]t 13:33:48, the CHS employee picks up her stool and walks away from Cassidy's cell."

(Doc. 1.2, p. 17 at § 69).

9) Four minutes later, at 13:37:57, after having tried to talk to Cassidy, an MCSO guard retrieves multiple MCSO and CHS employees to come to Cassidy's cell.

(Doc. 1.2, p. 17 at § 73).

10) After trying to elicit a response from Ms. Stigler for approximately one minute, "[a]t 13:39, they open her cell."

(Doc. 1.2, p. 17 at § 75).

MCSO and CHS staff never went longer than seventeen minutes when checking on Ms. Stigler. More often than not, only minutes went by between checks. The policy required an hourly check. (Doc. 1.2, p. 13, ¶ 35).

These checks, admitted to in Plaintiff's Complaint, contradict Plaintiff's argument in her Response that "over a two (2) hour span, none were even conducted." Instead, Plaintiff's allegations are directly related to the quality of the checks. MCSO and CHS staff were required to check on Ms. Stigler "once per hour." Further, "[p]atient[s are] encouraged to answer when their name is called and keep face uncovered to prevent green blanket from being removed." (Doc. 1.2, p. 14 at ¶ 36). This is encouraged, as admitted by Plaintiff in the Complaint, but not required. As such, it is up to the staff to determine if a patient is sufficiently responsive during checks. It is at their discretion to decide if the patient is responsive enough to warrant allowing them to keep their blanket or cover their face. For example, an inmate could keep her face covered by the blanket and simply respond verbally during a cell check. Plaintiff's argument that no verbal response was elicited from Cassidy during these cell checks defies logic when she bases this argument on nothing more than a video with no audio. (Doc. 1.2, p. 9, ll. 24-25).

As for gross negligence, Plaintiff must still prove that Defendants had a duty to conform to a certain standard of care, they breached that standard, their conduct caused the resulting injury; and Plaintiff incurred actual damages. *See Gipson v. Kasey*, 214 Ariz. 141, ¶ 9 (2007). And, although ordinarily, the issue of gross negligence is a question of fact to be decided by the jury, in order to present such an issue to the jury, the evidence to support gross negligence must be more than slight and may not border on conjecture. *Walls v. Arizona Dept. of Public Safety,* 170 Ariz. 591, 595 (App. 1991) (internal citations omitted). A court may withdraw the issue of gross negligence from the jury only when no evidence is introduced that would lead a reasonable person to find gross negligence. *Id.* A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result. *Id.* A gross negligence claim is doomed by implausible factual theories. *Fidler v. Arizona,* No. CV-22-00300-PHX-ROS, 2023 WL 2759023 (April 3,

2023).

Here, Defendants undoubtably had a duty. However, the evidence presented by Plaintiff demonstrates that both MCSO and CHS staff did not breach their duty and thus were not negligent or grossly negligent by any standard. Indeed, Plaintiff's Complaint makes clear that staff took their job very seriously. Although staff were required to perform cell checks every hour, they instead never went longer than seventeen minutes in between checks and often conducted checks within minutes of the last check. Without evidence, Plaintiff asks the Court to believe that every check that occurred after 12:45 P.M. elicited no response from Cassidy. That is the very definition of implausible inference. It would require ignoring common sense and assuming, without evidence, that every MCSO detention officer and CHS nurse that checked on Cassidy during this time frame failed to get a response from Cassidy and simply ignored it. This is insufficient to warrant denial of a motion to dismiss.

Because Defendants' actions were discretionary and not grossly negligent, qualified immunity does apply and Plaintiff's negligent/gross negligent cause of action should be dismissed. If MCSO and CHS staff were not negligent or grossly negligent, Plaintiff's vicarious liability cause of action against Defendant County should also be dismissed.

## II.   CONCLUSION

Plaintiff's reliance on articles to support her *Monell* claim is misplaced. Not only does Plaintiff fail to include these articles in the Complaint or the Response, she also neglects to explain how the information in these articles are directly relevant to the case at hand. As such, Plaintiff's *Monell* claim fails and should be dismissed. Because MCSO and CHS staffs' actions were discretionary, qualified immunity applies and Plaintiff's negligence cause of action should be dismissed. Finally, MCSO and CHS staffs' actions were not negligent or grossly negligent, so qualified immunity remains, and Plaintiff's vicarious lability claim should be dismissed against Defendant County.

///

///

///

**RESPECTFULLY SUBMITTED** this 13th day of January 2025.

                RACHEL MITCHELL
                MARICOPA COUNTY ATTORNEY

        BY:  /s/ Pamela A. Hostallero
                PAMELA A. HOSTALLERO
                MICHAEL E. GOTTFRIED
                Deputy County Attorneys
                *Attorney for Defendant's Maricopa*
                *County and Sheriff Gerald Sheridan*

## **CERTIFICATE OF SERVICE**

Per Article II(D)(3) of the Electronic Case Filing Administrative Policies and Procedures Manual, "No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." If the foregoing document is served on a party not listed in the Court's Case Management/Electronic Case Files (CM/ECF) System, service by paper copy will be indicated below or a certificate of service will be filed separately within a reasonable time after service.

*/s/ D. Shinabarger*

S:\CIVIL\CIV\Matters\CJ\2024\Johnson (Stigler) v. City of Phx 2024-1175\Pleading\Word PDF\Reply ISO MTD.docx