OFFICE OF THE CITY ATTORNEY
JULIE M. KRIEGH, City Attorney State Bar No. 021175
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov

Jody C. Corbett, Bar No. 019718
Assistant City Attorney
Karen Stillwell, Bar No. 022711
Assistant Chief Counsel
*Attorneys for Defendants City of Phoenix and James Jarvis II*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Barbara Johnson,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Phoenix, City of, et. al.,<br><br>　　　　　　Defendants. | Case No. 2:24-cv-02860-SPL--JZB<br><br>**DEFENDANTS CITY OF PHOENIX AND JAMES JARVIS II'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendants City of Phoenix and James Jarvis II (collectively "City Defendants") file their Reply in support of their Motion to Dismiss all of Plaintiff Barbara Johnson's ("Plaintiff") claims against them and urge the Court to grant it.

**I.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST OFFICER JARVIS IN HIS INDIVIDUAL CAPACITY.**

Plaintiff concedes that the factual allegations in her Complaint are vague as to what specific action Officer Jarvis took, yet argues that this Court should infer from these vague statements that Officer Jarvis violated Cassidy Stigler's ("Stigler") constitutional rights. (Indeed, there are only six paragraphs of Plaintiff's 17-page Complaint that are devoted to alleging facts against the City Defendants and some of those merely assert legal conclusions. (*See* Doc. 1-2, p. 13, ¶¶ 25-30).) While Plaintiff alleges in one paragraph of the Complaint that

1

Stigler did not pose any threat to Phoenix Police Officers, she alleges in subsequent paragraphs that Stigler was treated by paramedics with Narcan and had been taken to the hospital due to a fentanyl overdose. (*See* Doc. 1-2, pp. 13, 15, ¶¶ 31, 49-50). Thus, it can reasonably be inferred from these allegations that Stigler was violent during her interaction with Phoenix Police Officers.

Plaintiff is instead asking the Court to unreasonably infer from the vague facts that a "violent confrontation" with Stigler occurred during which Officer Jarvis "attacked" Stigler, and that Plaintiff has clearly demonstrated a constitutional violation. The factual allegation that Stigler's head struck the pavement multiple times is not sufficient to demonstrate that Officer Jarvis caused Stigler's head to strike the pavement multiple times. Further, Plaintiff's factual allegations that Stigler then spent nine hours in the hospital and was found dead in jail (not in Officer Jarvis' custody) the following day do not demonstrate that Officer Jarvis caused Stigler's injuries or violated Stigler's constitutional rights. Contrary to Plaintiff's assertion, her Complaint does not allege that Officer Jarvis directly caused these injuries to Stigler's head and body. Indeed, the allegations she points to in the Complaint to support this argument are simply legal conclusions and not factual allegations. (*See* Doc. 1-2, p. 21, ¶¶ 108, 110).

Additionally, none of the cases cited by Plaintiff in her Response support her argument that her vague factual allegations about Officer Jarvis' actions are sufficient to state a claim of excessive force. She attempts to argue that these cases establish that no use of force was reasonable when Officer Jarvis and his fellow officers arrested Stigler. However, the facts and procedural history of those cases are easily distinguishable from this case. In *Tillard v. Strawser*, 2022 WL 220488, at *3 (D. Ariz. Jan. 25, 2022), this Court ruled on a motion for summary judgment in which the plaintiff had alleged that while he was handcuffed at a sheriff's office substation, the defendant deputy sheriff "grabbed the handcuffs' chain link, 'pulling Plaintiff's arms high up into the air, [and] jamming with speed & tremendous force knee-ing the Plaintiff on his right side postero lateral lower torso'" which caused the plaintiff

to lose consciousness and be transported to the hospital. The Court ruled that these specific factual allegations against the defendant officer created a genuine issue of material fact to preclude summary judgment on the plaintiff's excessive force claim against the officer. *Id.* at *8. The portion of the *Tillard* case that Plaintiff cites for the Court is part of the qualified immunity analysis and is part of the discussion about whether any force is warranted when a person is handcuffed in a jail cell. Those are not the facts alleged in this case.

Likewise, in *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), *vacated and remanded on other grounds*, *Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001), the issue was whether judgment as a matter of law (following a hung jury at trial) was appropriate for the defendants who had allegedly used pepper spray on the plaintiff protestors. Again, there was no discussion regarding whether the factual allegations of the force used were sufficient. In *Fontana v. Haskin*, 262 F.3d 871, 875 (9th Cir. 2001), the plaintiff alleged that after she was already handcuffed after her DUI arrest, while she was being transported to the station, the defendant officer sat in the back seat of the patrol vehicle next to her and "wrongfully and inappropriately touched and sexually harassed" plaintiff. The Court ruled that genuine issues of material fact precluded summary judgment on whether defendant's alleged conduct constituted a violation of the plaintiff's constitutional rights. In contrast to this case, the conduct at issue in *Fontana*, occurred after the plaintiff was taken into custody and was handcuffed in the back of a patrol car. Further in *Drummond v. City of Anaheim*, 343 F.3d 1052, (9th Cir. 2003), the Ninth Circuit reversed summary judgment in favor of the defendant officers that the force used when the plaintiff was "handcuffed and lying on the ground," was excessive. In *Blankenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007), the plaintiff was being arrested for misdemeanor trespass and he alleged that one officer did not even attempt to handcuff him before three other officers tackled him, punched him several times, and an officer or officers pushed his face into the pavement by shoving a knee into the back of his neck. *Id.* Once the plaintiff was subdued, the officers placed

1  hobble restraints on his ankles, which made it difficult for him to move and breathe. *Id.* In
2  contrast to the allegations in this case, the allegations in *Blankenhorn* were very specific about
3  the force used by the officers and the plaintiff's lack of resistance. The Ninth Circuit
4  considered the district court's grant of summary judgment and determined that genuine issues
5  of material fact existed to preclude summary judgment on the issue of excessive force. There
6  is also no discussion in *Drummond* or *Blankenhorn* regarding whether the factual allegations
7  in the complaints were sufficient to state a claim.

8  In *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005), *overruled by United States v.
9  King*, 687 F.3d 1189 (9th Cir. 2012), the plaintiff alleged that a defendant officer pointed his
10 firearm at her five-week-old infant and kept the firearm trained on the infant while he searched
11 the bedroom. The Ninth Circuit reversed summary judgment granted to that officer. *Id.* at
12 1089. There is no discussion in *Motley* of whether the allegations in the Complaint against the
13 Officer were sufficient to state a claim. The facts of *P.B. v. Koch*, 96 F.3d 1298, 1304 (9th Cir.
14 1996), were that a high school principal used the physical force of slapping, punching, and
15 choking students who he was attempting to reprimand. In affirming the district court's denial
16 of summary judgment on the basis of qualified immunity to the principal, the Ninth Circuit
17 held that no force was reasonable in these instances. *Id.* The facts in *P.B.* are distinguishable
18 from this case because the principal was not a police officer attempting to take a criminal
19 suspect into custody and instead involved minor students being reprimanded.

20 Notably, none of Plaintiff's cited cases involve officers who are attempting to take an
21 individual who is high on drugs into custody. Instead, they involved individuals who were
22 complying and/or already handcuffed, high school students not subject to arrest, and an infant.
23 The United States Supreme Court has clearly held that some force is reasonable when making
24 an arrest of a criminal suspect because "the right to make an arrest . . . necessarily carries with
25 it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v.
26 Connor*, 490 U.S. 386, 396 (1989). Thus, Plaintiff's argument that no force was needed and

no force was reasonable to take Stigler into custody lacks merit. Plaintiff has failed to demonstrate that the facts alleged in her Complaint are sufficient to state a violation of Stigler's constitutional right by Officer Jarvis. Therefore, Count I should be dismissed as to Officer Jarvis in his individual capacity.

## II.   OFFICER JARVIS IS ENTITLED TO QUALIFIED IMMUNITY.

It is Plaintiff's burden to demonstrate with "existing precedent" that places "the statutory or constitutional question **beyond debate**" that a constitutional right was clearly established. *White v. Pauly*, 580 U.S. 73, 79 (2017) (emphasis added and internal quotation marks omitted); *McCrae v. City of Salem*, 2023 WL 2447438, at *5 (D. Or. Mar. 10, 2023). Plaintiff attempts to meet her burden by relying upon the above cases that are easily distinguished, as discussed in the preceding section. Regardless of whether Ninth Circuit precedent or United States Supreme Court precedent is required for a right to be clearly established, none of Plaintiff's relied-upon cases demonstrate that Officer Jarvis used excessive force in taking Stigler, who was high on drugs, into custody. Indeed, none of Plaintiff's cited cases even contain analogous facts to this matter. Instead, theses cases involved individuals who were complying, already handcuffed, high school students not subject to arrest, and an infant. Thus, because Plaintiff has failed to meet her burden of showing the violation of a clearly established right, even if the Court found that Plaintiff stated a proper claim, Officer Jarvis is entitled to qualified immunity for the claim against him in Count I.

## III.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST OFFICER JARVIS IN HIS OFFICIAL CAPACITY (OR THE CITY TO THE EXTENT SHE IS ATTEMPTING TO ASSERT ONE).

In her Response, Plaintiff concedes that Count I of her Complaint fails to state a claim against Officer Jarvis in his official capacity. Even though the City Defendants also argue that, to the extent Plaintiff is attempting to assert a *Monell* claim against the City in Count I, her Complaint fails to state a claim against the City, Plaintiff does not address that argument. Thus, she concedes it. As set forth below, Plaintiff's request to amend her Complaint to attempt to

assert a claim against Officer Jarvis in his official capacity (and/or the City) should be denied. Therefore, Count I must be dismissed as to Officer Jarvis in his official capacity and to the extent Plaintiff is attempting to assert it against the City.

### IV. THE CITY IS IMMUNE FROM PLAINTIFF'S CLAIMS FOR SIMPLE NEGLIGENCE UNDER ARIZONA LAW.

In her Response, Plaintiff appears to argue that Count I of her Complaint states a claim for simple negligence against the City, when it is actually Count II that is attempting to state a claim for simple and gross negligence. Regardless of which Count it is, however, the City is immune from simple negligence because Plaintiff admits that the only allegation for negligence involving the City is that Officer Jarvis should have used "available de-escalation" techniques when he arrested Stigler. (Doc. 1-2, pp. 22-23, ¶¶ 114, 120). Plaintiff does not dispute that the alleged decision by Officer Jarvis of what type of force to use was a discretionary act. Instead, she focuses on one sentence from the *Spooner* case claiming that qualified immunity from simple negligence does not apply because Officer Jarvis "knew or should have known that he was acting in violation of established law." *See Spooner v. City of Phoenix*, 246 Ariz. 119, 124, ¶ 10, 435 P.3d 462, 467 (App. 2018). However, Plaintiff has taken that one phrase from *Spooner* out of context and fails to provide the Court with the entire relevant holding from *Spooner*. The *Spooner* court goes on to say that a "A public official's conscious disregard of the law or the rights of others constitutes gross negligence." *Id.*, *citing Noriega v. Town of Miami*, 243 Ariz. 320, 328, ¶¶ 35-36, 407 P.3d 92, 100 (App. 2017); *Chamberlain v. Mathis*, 151 Ariz. 551, 558, 729 P.2d 905, 912 (1986). Thus, contrary to Plaintiff's argument, an alleged violation of established law does not demonstrate simple negligence and the City is immune from simple negligence.

Even if, as Plaintiff argues, she could allege simple negligence by alleging the violation of established law, the case she cites on this issue fails to support her allegation that an officer is "**required**" to consider less intrusive alternative to effect an arrest. Again, Plaintiff fails to

provide the Court with the entire relevant court holding, choosing instead to cherry pick one phrase to cite to the Court. The entire relevant discussion follows:

> Smith is correct that Defendant Officers were required to consider whether there were any "clear, reasonable, and less intrusive alternatives" available to effect the arrest. *Bryan*, 630 F.3d at 831. But **police officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable**." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment.... [and] would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves.... [when acting] under stress and subject to the exigencies of the moment."); *see also Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir. 1994) (**police officers "are not required to use the least intrusive degree of force possible.... the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene"**) (citing *Graham,* 490 U.S. at 396).

*Smith v. Chino Valley, Town of*, 2023 WL 5000631, at *9 (D. Ariz. Aug. 4, 2023) (emphasis added). Therefore, contrary to Plaintiff's argument, Officer Jarvis did not violate "established law" by not using less intrusive alternatives to effect Stigler's arrest. Accordingly, Plaintiff has failed to demonstrate that the City can be held liable for simple negligence in this case, and this claim should be dismissed.

### V.     THE CITY IS NOT LIABLE FOR DAMAGES FOR ALLEGED ACTS OF ITS OFFICERS THAT AMOUNT TO CRIMINAL FELONIES.

Plaintiff attempts to avoid the application of A.R.S. § 12-820.05(B) to the allegations in Count II of her Complaint by arguing that it was not the alleged specific use of the force by Officer Jarvis that was negligent, but the decision about what type of force to use. Plaintiff fails to point to any authority to support this argument. Regardless of whether it was Officer Jarvis' alleged use of force or decision about what type of force to use, the Arizona Supreme Court has held that these allegations are one and the same for purposes of evaluating whether an act was negligent:

> We also disagree with the court of appeals and McDonald that negligence liability can result from a law enforcement officer's "evaluation" of whether to

7

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

> intentionally use force against another person. A negligence claim requires either "an act" or a failure to "act." *See* Restatement § 284; *see also Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (citing Restatement § 284 with approval). An "act" is "an external manifestation of the actor's will." Restatement § 2. ***An actor's internal evaluation about whether to use force and the decision to do so are not "acts" and therefore cannot, by themselves, constitute negligence.*** Here, Klein's "act," and the sole cause of McDonald's injuries, was Klein's intentional release of Barry to bite and hold McDonald. *Cf. id.* cmt. c ("Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger."). As previously explained, an intentional act cannot also constitute negligence. *See supra* ¶¶ 19–20. In short, Klein's internal evaluation of whether to release Barry and his decision to do so was part and parcel of his intent to inflict harmful or offensive contact on McDonald. *Cf. Latits v. Phillips*, 298 Mich. App. 109, 826 N.W.2d 190, 196 (2012) ("[T]he claim that defendant failed to appreciate that [plaintiff] did not pose a risk of harm may have some bearing on whether defendant made the proper decision to shoot, but it does not alter the fact that it was an intentional decision to shoot.").
>
> We are further persuaded because permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to "plead around" statutory provisions that apply only to intentional tort claims.

*Ryan v. Napier*, 245 Ariz. 54, 60–61, ¶¶ 22-23, 425 P.3d 230, 236–37 (2018) (emphasis added). Plaintiff has failed to demonstrate that she is not alleging that Officer Jarvis committed an aggravated assault, and she has failed to demonstrate that she has alleged in her Complaint that the City knew of a propensity on the part of Officer Jarvis or any other officer to commit aggravated assault or use excessive force of any kind. Therefore, the City is immune from suit under A.R.S. § 12-820.05(B) for Plaintiff's claims against it in Count II.

### VI. PLAINTIFF CANNOT ASSERT A CLAIM AGAINST THE CITY FOR "NEGLIGENT" USE OF FORCE.

In her Response, Plaintiff attempts to distinguish her allegations in this case from the holding in *Ryan v. Napier*, 245 Ariz. 54, 60–61, ¶ 22, 425 P.3d 230, 236–37 (2018), that the evaluation of whether to use force cannot be the basis of a claim for negligence. She attempts to make the distinction by claiming that what she is really alleging is that Officer Jarvis "was negligent because he failed to even perform an evaluation as to whether to utilize available de-escalation and other less violent techniques—and, because he failed to conduct such an

8

evaluation, he also failed to utilize such methods." (Doc. 27, p. 12). This is a distinction without a difference, and is precisely the argument that the Arizona Supreme Court rejected in *Ryan*, when it stated, "We are further persuaded because permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to 'plead around' statutory provisions that apply only to intentional tort claims." 245 Ariz. at 61, ¶ 23, 425 P.3d at 237. The Arizona Court of Appeals recently reiterated the holding of *Ryan* when it held that there is no separate claim for negligent acts that later contribute to a use of force:

> Appellants provide no case law supporting their position that Arizona permits a separate, actionable claim for negligent acts and omissions that later contributed to a separately actionable intentional battery. . . .
>
> *Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) also provides no support for appellants' position. In *Mendez,* the Ninth Circuit Court of Appeals held that the plaintiffs had an independent basis under California negligence law to recover from deputy sheriffs who unlawfully entered a structure, misperceived a threat posed by a BB gun, and shot two people resulting in injury. *Id.* at 1071-1072. But the relevant California negligence law considers "law enforcement personnel's tactical conduct and decisions preceding the use of deadly force [as] relevant considerations . . . in determining whether the use of deadly force gives rise to negligence liability." *Id.* at 1082 (quoting *Hayes v. County of San Diego*, 305 P.3d 252 (Cal. 2013)). In this regard, California negligence law is at odds with *Ryan's* preclusion of liability for negligence for intentional acts injuring another.
>
> Although not addressed by the parties here, Arizona's wrongful death statute also provides support for this conclusion. That statute permits an action for wrongful death damages when the death is caused by an act that, if the death had not ensued, would have entitled the decedent to maintain a personal injury action. A.R.S. § 12-611; *see Barragan v. Superior Court*, 12 Ariz. App. 402, 405 (1970) (stating that the condition "that the action could have maintained by the deceased if death had not ensued, has reference not to the nature of the loss or injury but merely to the circumstances under which the injury arose and the nature of the wrongful act, neglect or default complained of."). Appellants' two-phase framing of this case removes the negligence claim from the reach of damages under the wrongful death act because they make no argument that Juan, had he lived, could have pursued a personal injury action for the discrete alleged negligent acts preceding the deputies' intentional use of force.

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

> The deputies' pre-shooting conduct here did not constitute negligence separable from the immediately-ensuing intentional shooting. The record in this case only supports a claim for intentional battery. Because the shooting was intentional, the negligence-based claims are inapplicable to these facts, and the superior court properly granted summary judgment on the negligence claim. *See Ryan*, 245 Ariz. at 62, ¶ 32.

*Torres v. Maricopa Cnty.*, 2024 WL 4442857, at *3–4, ¶¶ 16-19 (App. Oct. 8, 2024). The holding of *Ryan* applies to Plaintiff's claims in this case to preclude Plaintiff's claim for negligence in Count II against the City and it must be dismissed.

### VII. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR GROSS NEGLIGENCE.

Finally, Plaintiff has failed to demonstrate in her Response what specific action by Officer Jarvis she is claiming constitutes gross negligence. She again attempts to claim that the evaluation about what type of force Officer Jarvis chose to use was grossly negligent. Plaintiff fails to point to any factual allegations in the Complaint regarding what specific actions Officer Jarvis allegedly took other than purportedly being involved in a "violent confrontation" with Plaintiff. This is insufficient detail to demonstrate flagrant action that "evinces a lawless and destructive spirit." Therefore, Plaintiff's Complaint fails to state a claim against the City for gross negligence in Count II and that claim should be dismissed.

### VIII. PLAINTIFF CONCEDES THAT PUNITIVE DAMAGES CANNOT BE AWARDED AGAINST THE CITY UNDER ARIZONA LAW OR AGAINST THE CITY AND OFFICER JARVIS IN HIS OFFICIAL CAPACITY UNDER FEDERAL LAW.

In her Response, Plaintiff concedes that her claim for punitive damages against the City under both state and federal law and against Officer Jarvis in his official capacity under federal law should be dismissed.

### IX. PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND HER COMPLAINT BECAUSE SHE FAILS TO COMPLY WITH LRCIV 15.1.

At several places in her Response, Plaintiff requests that she be given the opportunity to amend her Complaint to state a claim. However, under LRCiv 15.1(a), a party who seeks leave to amend her Complaint "must attach a copy of the proposed amended pleading as an

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." Plaintiff fails to provide the Court with a Proposed Amended Complaint that complies with LRCiv 15.1(a). Therefore, the Court should deny Plaintiff's request to file an amended complaint.

## X.   CONCLUSION

For the reasons set forth in the City Defendants' Motion to Dismiss and above, the City Defendants respectfully request that all claims in Plaintiff's Complaint against them be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 20th day of February, 2025.

JULIE M. KRIEGH, City of Phoenix Attorney


By: s/ Jody C. Corbett
    Jody C. Corbett
    Assistant City Attorney
    Karen Stillwell
    Assistant Chief Counsel
    *Attorneys for Defendants City of Phoenix and James Jarvis II*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

Pamela A. Hostallero
Michael E. Gottfried
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
hostallp@mcao.maricopa.gov
gottfrim@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Defendant Maricopa County and Russ Skinner*

By:   s/ *M. Elena Sandoval*
4933-7001-4493, v. 2